**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMIE MAHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-1806 NAB |
| | ) | |
| JEFFERSON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Howard Wagner, Wes Wagner[1], Jefferson County, and Michael Reuter's Motions for Summary Judgment. [Docs. 70, 76, 79.] Plaintiff Jamie Mahn filed Memoranda in Opposition to Defendants' motions. [Docs. 91, 96.] The Defendants filed Reply Memoranda. [Docs. 100, 104, 108.] For the reasons stated below, the Court will grant Defendants' motions for summary judgment.

**I.      Procedural History**

Plaintiff Jamie Mahn filed this action against defendants Jefferson County, State of Missouri; 23rd Judicial Circuit, State of Missouri; Wes Wagner, individually and in his official capacity as County Clerk/Election Authority of Jefferson County, Missouri; Howard Wagner, individually and in his official capacity as the former Circuit Clerk of the 23rd Judicial Circuit, Jefferson County, Missouri; Jeanette McKee, individually and in her official capacity as Unit Manager within the Circuit Clerk's Office, Jefferson County; and Michael Reuter, in his official capacity as the current Circuit Clerk of the 23rd Judicial Circuit. [Doc. 1.] In Plaintiff's First Amended Complaint, she presented three counts against the defendants. [Doc. 28.] Count I was

---

[1] Defendant Wes Wagner's full name is Howard Wesley Wagner. Because his father Howard Lee Wagner is also a defendant in this action, the Court will refer to Howard Wesley Wagner as Wes Wagner.

a claim for violation of the First Amendment-patronage discharge from employment brought pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants Jefferson County, Wes Wagner, Howard Wagner, Jeanette McKee, and Michael Reuter. In Count II, Mahn alleged a Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 claim against Defendant 23rd Judicial Circuit. Count III, a claim under the Missouri Human Rights Act (MHRA) was voluntarily dismissed without prejudice by Plaintiff on April 2, 2015. [Docs. 41, 47.] The Court dismissed Plaintiff's claims against Jeannette McKee in Count I on May 4, 2015. [Doc. 55.] Count II, the FMLA claim, was voluntarily dismissed by Plaintiff on November 10, 2015. [Docs. 74, 75.] Therefore, Defendants 23rd Judicial Circuit and Jeannette McKee are no longer parties to this action and Count I, the patronage discharge claim, remains the only pending claim before the Court. The Defendants' motions for summary judgment regarding Count I are now fully briefed.

## II.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988 ) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on an issue of material fact. *Miller v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence,

he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Can. Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Miller*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

## III.    Discussion

### A.    Factual Background

The Court finds that the following facts are material and undisputed for purposes of Defendants' Motions for Summary Judgment[2]. Jefferson County is a political subdivision of the State of Missouri. The 23rd Judicial Circuit is a judicial district of the State of Missouri located in Jefferson County, Missouri. At all times relevant to this litigation, Defendant Howard Wagner was the elected Circuit Clerk for the 23rd Judicial Circuit. Defendant Wes Wagner was and is

---

[2] The facts listed are supported by appropriate citations to the record as required by Local Rule 4.01(E). Further, the Court has not included legal conclusions or opinions in this fact section.

currently the elected County Clerk/Election Authority for Jefferson County. Howard Wagner is Wes Wagner's father.

Jeannette McKee was the Chief Deputy Clerk and a unit manager for the 23rd Judicial Circuit. She was supervised by Howard Wagner. McKee supervised Mike Bone and Teresa Cusick. Howard Wagner hired Mahn as a deputy clerk for the 23rd Judicial Circuit in December 2012. Mike Bone was and is the supervisor of the Support Division. Bone supervised Mahn between January 2013 and July 2013. Teresa Cusick supervised Mahn from July 15, 2013 through April 2014 and from August 27, 2014 until September 19, 2014.

Jeannette McKee was an uncontested candidate in the August 2014 Democratic Primary Election for Circuit Court Clerk of the 23rd Judicial Circuit. There were two Republican candidates in the August 2014 Republican Primary for Circuit Clerk of the 23rd Judicial Circuit. On July 31, 2014, Mahn visited the Jefferson County Clerk/Election Authority, completed an application for the Republican primary absentee ballot, and voted by absentee ballot in the Republican primary election. Mahn's employment was terminated on September 19, 2014. In the termination letter, the reasons listed for Mahn's termination were as follows: "poor work performance, unable to complete tasks correctly and within given time lines. Abuse of sick leave, insubordination by lying to assigned supervisor." Before her employment ended, Mahn's personnel file contained negative information regarding her job performance.

B.     **Patronage Discharge**

"To the victor belong only those spoils that may be constitutionally obtained." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 64 (1990). The First Amendment prohibits government officials from discharging or threatening to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate

requirement for the position involved." *Rutan*, 497 U.S. at 64. "The First Amendment is not a tenure provision, protecting public employees from actual or constructive discharge. The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate." *Id.* at 76.

"To resolve a patronage discharge claim at the summary judgment stage, the district court first determines whether the plaintiff has submitted sufficient evidence that political affiliation or loyalty was a motivating factor in the dismissal." *Langley v. Hot Spring County, Arkansas*, 393 F.3d 814, 817 (8th Cir. 2005). "If the plaintiff meets this burden, summary judgment must be denied unless the defendant establishes *either* that the political motive is an appropriate requirement for the job, or that the dismissal was made for mixed motives and the plaintiff would have been discharged in any event." *Id.* (italics in original).

### 1. Defendants Jefferson County and Wes Wagner

The Court has carefully reviewed Mahn's claims against Defendants Jefferson County and Wes Wagner. Based on a thorough review of the evidence, the Court finds that summary judgment must be entered for Jefferson County and Wes Wagner in both his individual and official capacities. Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief "where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's offices." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). "A local government cannot be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those who edicts or acts may

fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. 694. "In order for municipal liability to attach, individual liability must first be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (citing *McVay v. Sisters of Mercy Health Sys.*, 399 F.3d 904, 909 (8th Cir. 2005)). "Suits against state officials in their official capacity [are] treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Because the real party in interest is the governmental entity and not the named official, the entity's policy or custom must have played a party in the violation of federal law. *Id.*

First, there is no evidence that Wes Wagner or Jefferson County had any authority to terminate Mahn's employment or were personally involved in the decision to terminate her employment. There is no evidence that Wes Wagner or anyone representing Jefferson County told Howard Wagner that Mahn voted in the Republican primary by absentee ballot. Mahn's claims against these defendants are based on unsubstantiated speculation. Mahn's evidence against Jefferson County and Wes Wagner consists of her personal belief that County Clerk's office employees who are friends with the Wagner family knew that she pulled a Republican primary ballot and told either Wes or Howard Wagner or both. Plaintiff testified as follows:

> Q: All right. So I'm going to try and broad stroke for a second. If I understand it, you have included Wes Wagner as a defendant in this case because you believe that he told Howard Wagner that you had voted Republican in the August 5 primary?
>
> A: Yes.
>
> Q: Is there any other reason that you believe Wes Wagner has any responsibility for your job termination?
>
> A: No.

6

Q:  Now I'd like to explore with you the basis that you have to believe that Wes Wagner told Howard Wagner that you had voted on a Republican ballot in the August 5 primary; okay?

A:  Mm-hmm.  Okay.

Q.  All right.  And what basis do you have to believe that?

A:  Well, when I went in to vote, my absentee for the primary, when I walked in the building and I sat down at the desk, Sherri Detter and Jeannie Goff heard me say that I wanted a Republican ticket.  When I walked back to cast my vote, and I – when I went to go put my ballot in the box, there's a table that's sitting right by the ballot box, and Wes Wagner was there, Joe Rathert, he was running for judge for the municipal court, or maybe he still – he was running for – he was in office for something.  And there was a couple of other people that were sitting there I didn't recognize.  And Jeannie was standing right there with Wes as soon as I got my ballot after I said she walked right back there.  She may have told him then.  I believe that that's the only way that him and his office could, could know is because I didn't tell anyone how I voted.

. . .

Q:  All right.  So if I can summarize the reasons that you believe that Wes Wagner knew that you had voted Republican and told his father, Howard Wagner, of the fact that you voted Republican, it's one, that you think Jeannie Goff probably heard you and you think that she may have told Mr. Wagner; and two, you feel generally that because he is in charge of elections, he and his office would be the only ones that would have that knowledge?

A.  Correct.

…

Q:  Is there anything else that causes you to believe that Wes Wagner knew you pulled a Republican ballot?

A:  Yes.  Sherri Detter and her dad and Wes and Howard are all good friends. I can't remember his first name but Sherri Detter's dad, he ran for something a time or two.  I don't know what he's ran for.  I'm not into politics.  I just know

7

he's ran for something, and I believe that she said - - may have said something to her dad too.

. . .

Q:  And you also saw Jeannie Goff standing there?

A:  Yes.

Q:  And the fact that she was there and had apparently gone straight back there after standing over you and hearing, presumably hearing you ask for a Republican ballot, that's caused to you [sic] believe that maybe she went back there and told the folks at the table, or at least Wes Wagner, that Jamie Mahn- -

A:  Yes.

Q:  Jamie Mahn pulled a Republican ballot?

A:  Yes.

Q:  But you didn't hear her say that; correct?

A:  No, I did not.

Q:  So fair to say that would be speculation on your part?

A:  Yes.

Q:  And the testimony you gave that you think Sherri Detter may have told Wes Wagner or Howard Wagner about the fact that you pulled Republican ballot, that would also be speculation?

A:  Yes.

[Doc. 70-1 at 41-43, 46.[3]]  Mahn's speculation about friendships and the possibilities of what could or may have happened do not constitute evidence to survive a summary judgment motion. *See Baker v. Jones*, No. 4:13-CV-1334 RWS, 2015 WL 5178178 at \*4-5 (Sept. 4, 2015) (plaintiffs' evidence based on assumptions, speculation, and conjecture about relationships

---

[3] Due to the volume of deposition testimony and exhibits, the Court will use the document numbers for the exhibits on the Court's docket sheet and the file-stamped page numbers at the top of the page to refer to exhibits.

between defendant and others insufficient to show elected official knew who employees supported in election).  Mahn's claim is further undermined by her testimony and allegations in her First Amended Complaint that before the August 5, 2014 primary Howard Wagner told her that he saw her having drinks with the " other opponent" on Facebook.  Defendant Wes Wagner averred in an affidavit that he did not know Mahn pulled a Republican absentee ballot in July or August 2014 or that she voted in the Republican primary election in Jefferson County.  [Doc. 70-2]  Defendant Wes Wagner also averred that he did not tell Howard Wagner that Mahn voted by absentee ballot in the Republican primary election.  [Doc. 70-2.]  Mahn has produced no evidence to counter Wes Wagner's affidavit or testimony regarding the same.  "To survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than speculation, conjecture or fantasy.  *Putnam v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).  Mahn has failed to produce any affirmative evidence and specific facts showing there is a genuine dispute on an issue of material fact regarding whether Wes Wagner and by extension Jefferson County violated her constitutional rights under the First Amendment.  See *McCoy v. City of Monticello*, 411 F.3d at 922 (municipal liability can only be found after individual liability is found on underlying substantive claim).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  Therefore, the Court will grant summary judgment in favor of Defendants Wes Wagner (in official and personal capacities) and Jefferson County.

### 2. Defendants Michael Reuter and Howard Wagner

Next, the Court will address the claims against Defendants Michael Reuter and Howard Wagner. Defendant Howard Wagner was the former Circuit Court Clerk and is sued in his individual capacity. Defendant Michael Reuter is the current Circuit Court Clerk and is sued in his official capacity.

First, the Court will address whether Mahn has submitted sufficient evidence that political affiliation or loyalty was a motivating factor in her dismissal. At the summary judgment stage, all inferences are construed in favor of the non-moving party if there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.). Mahn testified that in July 2014, Howard Wagner summoned her into his office and told her that he knew she was having drinks with "another opponent." [Doc. 70-1 at 10.] Mahn stated that Howard Wagner stated he saw it on Facebook. [Doc. 70-1 at 10.] Mahn testified that Howard Wagner threatened her job and told her, "you need to support what I support. This is my office." [Doc. 70-1 at 10.] Mahn also testified that Howard Wagner told her if she "didn't support his decision and [vote] for Jeannette," she would lose her job. [Doc. 70-1 at 11.] Mahn testified that she told Howard Wagner that she was going to vote for whoever she wants to vote for and what he was doing was unconstitutional. [Doc. 70-1 at 10.] Mahn voted in the Republican primary on July 31, 2014. Mahn was terminated by Howard Wagner on September 19, 2014.

Several employees of the Clerk's office testified in depositions that Howard Wagner made comments to Clerk's office employees about voting at a birthday or retirement party for

him in August 2014, after the primary election.[4]  Kim Johnston testified that Howard Wagner stated, "I know how you vote.  I don't see the ballots, but I know how you vote."  [Doc. 95-8 at 7.]  Johnston also testified that Howard Wagner encouraged people to vote and that Howard Wagner told her at the time that she was hired "this is a Democrat world, people are Democrat there, and we should support the Democrats."  [Doc. 95-8 at 7, 10.]  Johnston believes that Howard Wagner stated that if Reuter were elected, he would clean house.  [Doc. 95-8 at 10.]

Dawn Nixon testified that Howard Wagner mentioned that at a previous job, two lower level employees told him that they had voted a particular way, but he already knew how they voted and he did not like it.  [Doc. 95-9 at 7-8, 11.]  Nixon further testified that Howard Wagner said, "I cannot tell any of you how to vote, except for her," and motioned to Jeannette McKee. [Doc. 95-9 at 9.]  Nixon did not remember Howard Wagner stating that he knew how everyone voted.  [Doc. 95-9 at 10.]

Natosha Byers testified that she had to register to vote to work at the Clerk's office. [Doc. 95-10 at 13.]  Amy Armbruster testified that Howard Wagner told the Clerk's office employees that he knew if the employees voted.  [Doc. 95-11 at 6.]  Johnston, Byers, and Armbruster testified that they felt pressured to vote the Democratic ticket and/or pretend that they were Democrats.  [Docs. 95-8 at 9, 95-10 at 9-10, 95-11 at 10-11.]

Howard Wagner contends that Mahn's claim that she was terminated for not voting in an uncontested Democratic primary would be nonsensical, because Jeannette McKee would have won the primary regardless of how Mahn voted.  He asserts there would be no reason to terminate Mahn for failing to vote for someone in an uncontested election.  Howard Wagner denies that he told Mahn that he knew she had drinks with a Republican candidate, that he would

---

[4] The Court is not including any inadmissible hearsay contained in the employees' depositions.  Several employees testified about what they heard through rumors and gossip.  As rumors and gossip are not admissible evidence and not based on personal knowledge, those statements are not included.

find out how she voted, or that her employment would be terminated if she did not vote Democratic. Howard Wagner also denies threatening to fire anyone or use disciplinary action against anyone who voted for a Republican candidate in the August 5, 2014 primary. Finally, Howard Wagner denies that he told employees who to vote for in the election.

The Court acknowledges that firing someone for not voting in an uncontested election would be an unreasonable and odd decision. Nevertheless, there is a genuine dispute of material fact regarding communications that Howard Wagner made to employees regarding voting the Democratic party ticket. A jury could conclude based on the testimony of Plaintiff and the other Clerk's office employees, along with the proximity of Plaintiff's termination to the election, that political affiliation or loyalty was a motivating factor in her dismissal. This is a very close case, but the Court must draw any inferences in favor of Plaintiff. Therefore, for purposes of summary judgment only, the Court finds that Mahn has submitted sufficient evidence that political affiliation or loyalty was a motivating factor in her dismissal.

Next, the Court must determine whether the defendants established *either* that the political motive is an appropriate requirement for the job, or that the dismissal was made for mixed motives and the plaintiff would have been discharged in any event. In this case, the parties do not dispute whether party affiliation is an appropriate requirement for the deputy clerk position with the Circuit Court. The deputy clerk position in the 23rd Circuit Court, while important, clearly does not require being affiliated with a particular political party.

Based on all of the evidence presented, the Court finds that Defendants Howard Wagner and Michael Reuter have established that Mahn would have been terminated in any event. Mahn has not adequately refuted the evidence that she made numerous docketing errors, the Clerk's office received complaints about her work from judges, other court staff, and the public, and that

12

Mahn received notification about these performance issues. Mahn's response that Teresa Cusick was not a good supervisor and that a previous supervisor did not complain about her work is insufficient in light of the evidence from the personnel file regarding her work performance. [Docs. 82, 82-1, 82-2, 82-3,82-4, 82-5.] A third supervisor Mike Bone averred that during the time he supervised Mahn, she "consistently exhibited poor work performance," "was not doing her job," and "was pushing her work off on other clerks." [Doc. 81-2 at 2.] The evidence from her personnel file shows that these performance issues occurred before Mahn's alleged discussion with Howard Wagner in July 2014 and the 2014 primary election, including documentation of performance issues in 2013. [Docs. 82-1 at 24-32.]

Therefore, the Court will grant summary judgment in favor of Defendants Howard Wagner and Michael Reuter.

IV. **Conclusion**

Based on the foregoing, the Court finds that the Defendants' motions for summary judgment should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Jefferson County and Wes Wagner's Motion for Summary Judgment is **GRANTED**. [Doc. 70.]

**IT IS FURTHER ORDERED** that Defendant Howard Wagner's Motion for Summary Judgment is **GRANTED**. [Doc. 79.]

**IT IS FURTHER ORDERED** that Defendant Michael Reuter's Motion for Summary Judgment is **GRANTED**. [Doc. 76.]

A separate order of Judgment will accompany this Memorandum and Order.

Dated this 3rd day of March, 2016.


        /s/ Nannette A. Baker
        NANNETTE A. BAKER
        UNITED STATES MAGISTRATE JUDGE