UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMIE MAHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14-CV-1806 NAB |
| | ) |
| JEFFERSON COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Howard Wagner's Motion for Summary Judgment. [Doc. 130.] Plaintiff Jamie Mahn filed a Memorandum in Opposition and Defendant Howard Wagner filed a Reply Brief. [Docs. 137, 140.] For the following reasons, the Court will deny Defendant Howard Wagner's Motion for Summary Judgment.

**I.   Procedural Background**

Plaintiff Jamie Mahn filed this action against defendants Jefferson County, State of Missouri; 23rd Judicial Circuit, State of Missouri; Wes Wagner, individually and in his official capacity as County Clerk/Election Authority of Jefferson County, Missouri; Howard Wagner, individually and in his official capacity as the former Circuit Clerk of the 23rd Judicial Circuit, Jefferson County, Missouri; Jeanette McKee, individually and in her official capacity as Unit Manager within the Circuit Clerk's Office, Jefferson County; and Michael Reuter, in his official capacity as the current Circuit Clerk of the 23rd Judicial Circuit. [Doc. 1.] In Plaintiff's First Amended Complaint, she presented three counts against the defendants. [Doc. 28.] Count I was a claim for violation of the First Amendment-patronage discharge from employment brought pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants Jefferson County, Wes Wagner,

Howard Wagner, Jeanette McKee, and Michael Reuter. In Count II, Mahn alleged a Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 claim against Defendant 23rd Judicial Circuit. Count III, a claim under the Missouri Human Rights Act (MHRA) was voluntarily dismissed without prejudice by Plaintiff on April 2, 2015. [Docs. 41, 47.] The Court dismissed Plaintiff's claims against Jeannette McKee in Count I on May 4, 2015. [Doc. 55.] Count II, the FMLA claim, was voluntarily dismissed by Plaintiff on November 10, 2015. [Docs. 74, 75.]

On March 3, 2016, the Court granted summary judgment in favor of Defendants Jefferson County, Wes Wagner, Howard Wagner, and Michael Reuter on Plaintiff's remaining claim in Count I for patronage discharge under the First Amendment. [Doc. 110.] Plaintiff filed an appeal with the Eighth Circuit Court of Appeals. The Eighth Circuit affirmed in part and reversed in part the court's summary judgment order. The Eighth Circuit remanded this case to allow the Court to rule on whether Defendants Howard Wagner and Michael Reuter were entitled to qualified immunity as a defense to Count I. *Mahn v. Jefferson County*, 891 F.3d 1093 (8th Cir. 2018). Defendant Howard Wagner filed a motion for summary judgment on this issue. Therefore, this order will only address whether Defendant Howard Wagner is entitled to qualified immunity as a defense to the claims in Count I of Plaintiff's Complaint.

## II. Factual Background[1]

In 2012, Defendant Howard Wagner hired Mahn as a deputy clerk in the 23rd Judicial Circuit. In 2014, Howard Wagner did not file for reelection and he supported fellow Democrat, and current Chief Deputy Clerk Jeanette McKee to replace him. Mahn alleges that Howard Wagner "forcefully impressed upon her the need for her to vote for McKee and the Democratic ticket." She alleges that she told him, "I'll vote for whoever I want to, and what you're

---

[1] The parties submitted substantially the same facts as submitted in the briefing for the first motion for summary judgment. The Court is using the succinct summary provided in the Eighth Circuit opinion on appeal in this action. *Mahn*, 891 F.3d at 1095, 1098.

threatening is unconstitutional." McKee was running unopposed in the Democratic Party primary. Mahn voted in the August 5, 2014 Republican Party primary. After she voted, she alleges that Howard Wagner told her, "Just wanted to let you know that, you know, I know how you voted. I don't think you made the right decision. You know this could cost you your job." On September 19, 2014, Howard Wagner terminated Mahn's employment, stating in a letter the following reasons for her termination, "poor work performance, unable to complete tasks correctly and within given time lines. Abuse of sick leave, insubordination by lying to assigned supervisor." Mahn believes that she was terminated because Howard Wagner knew she voted in the Republican primary. Howard Wagner denies that she was terminated for other than work performance. Mahn had documented performance issues in 2013 and 2014, including multiple negative performance reviews. She also admits that she overdrew her sick leave on at least one occasion.

## III. Standard of Review

A party may move for summary judgment, identifying each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civil P. 56(a). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). "To survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than speculation,

conjecture or fantasy." *Putnam v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). In passing on a motion for summary judgment, it is not the court's role to decide the merits. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

**IV. Discussion**

The First Amendment prohibits government officials from discharging or threatening to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 64 (1990). "The First Amendment is not a tenure provision, protecting public employees from actual or constructive discharge. The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate." *Rutan*, 497 U.S. at 76. To resolve a patronage discharge claim at the summary judgment stage, "the district court first determines whether the plaintiff has submitted sufficient evidence that political affiliation or loyalty was a motivating factor in the dismissal." *Langley v. Hot Spring County, Arkansas*, 393 F.3d 814, 817 (8th Cir. 2005). "If the plaintiff meets this burden, summary judgment must be denied unless the defendant establishes *either* that the political motive is an appropriate requirement for the job, or that the dismissal was made for mixed motives and the plaintiff would have been discharged in any event." *Id.* (italics in original).

4

The crux of Mahn's claim against Howard Wagner is that he terminated her employment, because she did not vote for his preferred candidate in a local election. In a decision granting Defendant Howard Wagner's first motion for summary judgment, this Court found that Defendant Howard Wagner established that Mahn's dismissal was made for mixed motives and the Mahn would have been discharged in any event. The Eighth Circuit disagreed and found that although Defendant showed that Mahn's dismissal may have been warranted anyway, it was not established that Mahn's performance would have "indisputably caused her termination." *Mahn*, 891 F.3d at 1098.

Upon remand, Defendant Howard Wagner asserts qualified immunity as a defense to Mahn's patronage discharge claim. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231. "A state official will be shielded by qualified immunity if (1) the plaintiff fails to allege or show that the official's conduct violated a constitutional right or (2) the constitutional right was not "clearly established' at the time of the official's alleged misconduct." *Duffie v. City of Lincoln*, 834 F.3d 877, 882 (8th Cir. 2016). It is within the Court's discretion to select which inquiry to address first. *Pearson*, 555 U.S. at 236. "When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011).

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Bernini v. City of St. Paul*, 665 F.3d 997, 1005 (8th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "At the summary judgment stage, granting qualified immunity is not appropriate where … a dispute remains regarding facts material to the qualified immunity issue." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1212 (8th Cir. 2013).

"The Supreme Court has developed two lines of cases that assess how to balance First Amendment rights of government employees with the need of government employers to operate efficiently." *Thompson v. Shock*, 852 F.3d 786, 791 (8th Cir. 2017) (citing *Hinshaw v. Smith*, 436 F.3d 997, 1005-06) (8th Cir. 2006)). "For 'overt expressive conduct,' federal courts apply the balancing test as found in the line of cases following *Pickering* and *Connick*.[2]" *Shock*, 852 F.3d at 791 (citing *Hinshaw*, 436 F.3d at 1005). "The typical *Pickering–Connick* case involves a government employee causing workplace disruption by speaking as a citizen on a matter of public concern, followed by government action adversely affecting the employee's job." *Shock*, 852 F.3d at 791.

For pure patronage dismissals, federal courts apply the narrow-justification test outlined in *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980). "The typical *Elrod-Branti* case involves the dismissal of an employee because of his or her political affiliations or support for certain candidates. *Shock*, 852 F.3d at 791 (citing *DePriest v. Milligan*, 823 F.3d 1179, 1184) (8th Cir. 2016)). "A dismissal based solely on account of an employee's political affiliations violates the First Amendment unless the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public

---

[2] In *Pickering v. Board of Educ. Township High Sch. Dist. 205*, the Supreme Court held that "absent proof of false statements knowingly or recklessly made by him, a teachers' exercise of his right to speak on matters of public concern may not furnish the basis for his dismissal from public employment." 391 U.S. 563, 574-75 (1968). In *Connick v. Myers*, the Supreme Court held that if a public employee does not speak as a citizen, or does not address a matter of public concern, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. 461 U.S. 138, 147 (1983).

office involved." *Shock*, 852 F.3d at 791 (quoting *DePriest*, 823 F.3d at 1184)). Under *Elrod-Branti*, the court cabins its inquiry to the political-affiliation requirement itself, without the need to do the *Pickering-Connick* balancing analysis. *Id.* at 792 (citing *O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 719 (1996)).

Because Mahn is alleging dismissal based on her affiliation with the "wrong candidate," the Court will apply the *Elrod-Branti* test in evaluating whether Howard Wagner is entitled to qualified immunity regarding Mahn's patronage discharge claim. *See Shock*, 852 F.3d at 793 (when the constitutional right involves, joining, working for, or contributing to the political party and candidates of the employee's choice, the Court applies the *Elrod-Branti* test). Based on the summary judgment record before the Court, the undersigned finds that Howard Wagner's claim for qualified immunity must be denied. It was clearly established, at the time of Mahn's dismissal, that a government employer cannot dismiss a government employee from her non-policymaking, non-confidential position because she did not vote for her employer's preferred political candidate. *See Elrod*, 427 U.S. at 373 (patronage dismissals are unconstitutional under the First and Fourteenth Amendments to the United States Constitution); *Branti*, 445 U.S. at 518 (the issue is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved). Viewing the facts in the light most favorable to Mahn, the Court cannot grant summary judgment on the qualified immunity issue if the facts are as Mahn has alleged them. Defendant Howard Wagner focuses on the evidence of Mahn's poor work performance. There is no dispute that the record contains negative performance reviews and many documented complaints about Mahn's work product. The issue for qualified immunity purposes is whether Howard Wagner should have known that he could not fire an employee for failing to vote for his preferred candidate. The Supreme Court

decided this issue over thirty years ago. Further, the parties have a genuine factual dispute regarding the reasons for Mahn's dismissal. This factual dispute cannot be resolved with dueling affidavits and depositions on summary judgment.

The Eighth Circuit ruled in its order remanding this action that there is a dispute of genuine material fact regarding whether Howard Wagner terminated Mahn for voting in the Republican primary and whether he would have terminated Mahn anyway based on her poor work performance. *Mahn*, 891 F.3d 1093, 1098. Therefore, this Court cannot now find that Mahn's poor work performance establishes that she would have been discharged regardless of whether she voted for Jeannette McKee. The law of the case doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *Gander Mountain Co. v. Cabela's Inc.*, 540 F.3d 827, 830 (8th Cir. 2008). "[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. The doctrine applies to decisions made by appellate courts and final decisions made by district courts that have not been appealed." *Id.* For the foregoing reasons, the Court will deny Defendant Howard Wagner's motion for summary judgment.

Finally, due to the scheduling conflicts on the Court's docket, the trial in this matter will be reset to March 4, 2019.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Howard Wagner's motion for summary judgment is **DENIED**. [Doc. 130.]

**IT IS FURTHER ORDERED** that the trial of this action originally set for January 14, 2018 is **RESET** to **Monday, March 4, 2019 at 9:00 a.m.** A final pre-trial conference is set for **Thursday, February 28, 2019 at 11:00 a.m.**

**IT IS FURTHER ORDERED** that the parties' pretrial materials must be filed no later than **February 11, 2019** and all motions in limine must be filed no later than **February 20, 2019**. All other provisions of the Amended Case Management Order of August 15, 2018 remain in full force and effect.

Dated this 18th day of December, 2018.

                                             /s/ Nannette A. Baker
                                             NANNETTE A. BAKER
                                             UNITED STATES MAGISTRATE JUDGE